IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION


- - - - - - - - - - - - X
UNITED STATES OF AMERICA, :          <u>REDACTED TRANSCRIPT</u>
                          :
      Plaintiff,          :
                          :
vs.                       :          Case No. 4:21-cr-00110
                          :
ANDREW SCOTT SCANLAN,     :          <u>SENTENCING HEARING TRANSCRIPT</u>
                          :
      Defendant.          :
- - - - - - - - - - - - X


                          Courtroom, Second Floor
                          U.S. Courthouse
                          123 East Walnut Street
                          Des Moines, Iowa
                          Thursday, March 10, 2022
                          10:00 a.m.


BEFORE:  THE HONORABLE JAMES E. GRITZNER, Senior Judge.


APPEARANCES:

For the Plaintiff:        ADAM J. KERNDT, ESQ.
                          United States Attorney's Office
                          U.S. Courthouse Annex
                          110 East Court Avenue, Suite 286
                          Des Moines, Iowa  50309

For the Defendant:        ANDREW J. GRAEVE, ESQ.
                          Federal Public Defender's Office
                          400 Locust Street, Suite 340
                          Des Moines, Iowa  50309




              KELLI M. MULCAHY, CSR, RDR, CRR
                 United States Courthouse
             123 East Walnut Street, Room 115
                 Des Moines, Iowa 50309

I N D E X

VICTIM IMPACT STATEMENT:                                    PAGE

J█████   A█████                                            10

P R O C E E D I N G S

1

2          (In open court, with the defendant present.)

3          THE COURT:  Take a seat, please.  Good morning.

4          We are convened in the matter of the United States vs.

5   Andrew Scott Scanlan, Criminal No. 21-110, for purposes of

6   sentencing as a result of the defendant's plea to Count 2,

7   production of child pornography; Count 3, production of child

8   pornography; and Count 6, offense by a registered sex offender.

9          Mr. Scanlan, do you understand you're here now for

10  sentencing as a result of your plea?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Is your plea still guilty, sir?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Counsel, is there any legal reason why

15  sentence could not be pronounced today?

16         MR. KERNDT:  No, Your Honor.

17         MR. GRAEVE:  No, Your Honor.

18         THE COURT:  I have reviewed the Presentence

19  Investigation Report and related materials.  I have also

20  reviewed the memoranda of counsel and other materials filed in

21  the matter.

22         Based upon that review, I accept the plea agreement and

23  agree to be bound by that agreement.  I find the counts to which

24  the defendant pled adequately reflect the seriousness of the

25  offense behavior, and I find the plea agreement is in the public

4

1 interest and in the interest of justice.

2        Has the Government had an opportunity to review the

3 Presentence Investigation Report?

4        MR. KERNDT:  Yes, Your Honor.

5        THE COURT:  Do you find any factual error in the

6 report?

7        MR. KERNDT:  No errors, Your Honor.

8        THE COURT:  Mr. Graeve, have you reviewed that report?

9        MR. GRAEVE:  We have, Your Honor.

10        THE COURT:  Mr. Scanlan, did you read the Presentence

11 Investigation Report yourself?

12        THE DEFENDANT:  Yes, Your Honor.

13        THE COURT:  Have you had a full opportunity to discuss

14 the contents of that report with Mr. Graeve, your attorney?

15        THE DEFENDANT:  Yes, Your Honor.

16        THE COURT:  Mr. Graeve, do you find any factual error

17 in the final report?

18        MR. GRAEVE:  No factual errors, Your Honor.

19        THE COURT:  All right.  I will accept the Presentence

20 Investigation Report as factual findings for our purposes here

21 today.

22        We have a couple of issues with regard to the

23 calculation of the guideline range under the circumstances of

24 this case.

25        For you folks that are in the courtroom that are not

1  accustomed to this process, in federal courts in this country,

2  we have a guideline sentencing system that looks at the

3  particular facts of a given case, and that sets up an offense

4  number, and that is compared to the criminal history of the

5  defendant, and the combination of those creates a number that is

6  used in the process of a matrix that comes up with a recommended

7  sentencing range that is designed to come up with a consistency,

8  as much as we can, throughout the country.  But at the same

9  time, each case is addressed individually.  The circumstances in

10  this case are such that the range is rather high.

11        We have a couple of issues.  First of all, with

12  Sentencing Guideline 2G2.1(b)(4)(A), Mr. Graeve, anything

13  further on that?

14        MR. GRAEVE:  Your Honor, I'd rest on the brief.  I've

15  cited a couple cases; first, *Diaz,* from the Eighth Circuit, that

16  the Court's aware of, and then other opinions from the Sixth

17  Circuit, which aren't binding on this Court, of course.  *Diaz*

18  is.  But I'd rest on what I'd already argued in the brief.

19        THE COURT:  Anything further from the Government on

20  that?

21        MR. KERNDT:  Your Honor, as I noted in my sentencing

22  memorandum, the parties have stipulated to a very small set of

23  additional facts; that the Child Victim 1 was prepubescent at

24  the time the defendant sexually abused him and that Child Victim

25  1 was a fourth-grader during the 2020-2021 school year.  The

1 fact that he was prepubescent is relevant to this determination,

2 at least in part.  And I understand the defense has no objection

3 to that stipulation on those additional minor facts.

4            MR. GRAEVE:  That's correct, Your Honor.

5            THE COURT:  All right.  Thank you.

6            MR. KERNDT:  With that, Your Honor, we've briefed this

7 issue.  We believe that the enhancement here plainly applies,

8 given the facts here and the law, and we would ask that the

9 Court apply it.

10            THE COURT:  Under Eighth Circuit precedent, this Court

11 is obliged to go ahead and credit that particular enhancement

12 under 2G2.1(b)(4)(A), and so the enhancement is properly

13 applied.

14            With that, I think that makes the issue under Section

15 4B1.5 immaterial.  Isn't that correct, Mr. Graeve?

16            MR. GRAEVE:  Your Honor, it wouldn't change the

17 guidelines if the Court were to rule in our favor, but we would

18 request a ruling still on this for purposes of appeal in case

19 there is an appeal from the Court's sentence.

20            THE COURT:  Anything further on that, then, from the

21 Government?

22            MR. KERNDT:  I would rest on my brief, Your Honor.

23            THE COURT:  Having reviewed the arguments in the brief,

24 the Court also finds that 4B1.5(b)(1) is appropriately included.

25 The Court does realize that at this point in time, because of

1 | the prior finding, it's not of significance with regard to the

2 | calculation of the guideline range today.

3 |         This case presents under the federal sentencing

4 | guideline system with an Offense Level 43, a Criminal History

5 | Category V.  That would provide a guideline range of life in

6 | prison, but due to the fact that there's a statutory maximum on

7 | Counts 2 and 3, the range becomes 720 months as to Counts 2 and

8 | 3 and 120 months consecutive as to Count 6.

9 |         MR. KERNDT:  Your Honor, given the way the Court

10 | resolved the Section 4 -- Chapter 4 issue, I believe his

11 | criminal history is III as normally calculated under the

12 | criminal history section.

13 |         MR. GRAEVE:  That is correct, Your Honor.

14 |         THE COURT:  Do you agree with that, counsel?

15 |         MR. GRAEVE:  Yes.

16 |         THE COURT:  Criminal History Category III.  But that

17 | would not change the guideline range.

18 |         MR. KERNDT:  Absolutely, Your Honor.

19 |         THE COURT:  Okay.  With that, then, Mr. Graeve, I've

20 | read your memorandum, but your further thoughts as to what would

21 | be an appropriate sentence?

22 |         MR. GRAEVE:  Thank you, Your Honor.

23 |         Your Honor, we've made the argument that the guidelines

24 | range is 360 to life.  The Court's ruled that it is life.  It's

25 | up to 70 years.

1          When you look at the amount of time that we are talking

2    about in this case, really, the guidelines almost become

3    irrelevant.  It comes down to the facts and circumstances under

4    3553(a) that the Court has to consider.

5          That section demands that the Court impose a sentence

6    that's sufficient, but not greater than necessary, and the

7    question for this Court is whether that statute requires that it

8    sentence him to what is effectively a life sentence, as the

9    Government's argued for.

10         We'd urge this Court to sentence him to a sentence that

11   is the same number of years that he's already lived.  He's a

12   33-year-old man.  We would request that the Court sentence him

13   to 33 years, recognizing that that sentence will mean he is

14   incarcerated for a significantly long period of time.  We're not

15   talking about a sentence measured in years, but a sentence

16   measured in decades.

17         That sentence would take into account the terrible

18   nature of this offense.  There's no denying that.  There's no

19   denying what the offense conduct has shown.  And these are of

20   the most serious offenses that this Court considers, we

21   recognize that, but a sentence of life is not necessary here.

22   It's more than what is justified.

23         And we'd urge the Court to take into account the

24   terrible life that Mr. Scanlan has had that seemed to create

25   this cycle of abuse that has now resulted in him perpetuating

1   additional abuse on someone else.

2           Mr. Scanlan has described the terrible nature of his

3   own childhood.  He didn't use the word "terrible," but as I've

4   said in my sentencing memorandum, he used a more expressive

5   term.  It's a life where he was subject to abuse as a kid.  He

6   was sexually abused as a kid.  He was, in large part, abandoned,

7   lacked friends, and has had significant mental health issues

8   even as a kid, mental health issues that required his

9   hospitalization as a kid.

10           No doubt it appears that what has happened here has

11  been a perpetuation of a cycle of abuse.  The hope is that the

12  cycle ends now.  But sentencing Mr. Scanlan to a sentence that's

13  near what the Government is suggesting won't end that cycle.

14  That cycle -- ending that cycle is going to depend on everyone

15  else in the community now that is aware of what has occurred.

16           Your Honor, the Court should sentence him to 33 years

17  in prison.  That is an incredibly long time already, and it's

18  enough.

19           That's all.

20           THE COURT:  All right.  Thank you, counsel.

21           Mr. Scanlan, you have the right to speak to the Court

22  yourself today, if you want.  It is entirely up to you whether

23  you do so, but if you have something you'd like to say, I'd be

24  glad to hear from you.

25           THE DEFENDANT:  No, Your Honor.

1          THE COURT:  All right.  The Government's position,

2     please?

3          MR. KERNDT:  Your Honor, would the Court like to hear

4     any victims at this time?

5          THE COURT:  If you have them to present, yes.

6          MR. KERNDT:  Thank you, Your Honor.

7          At this time the mother of the 10-year-old victim,

8     Child Victim No. 1.

9          THE COURT:  If you'd step up to the podium so I can

10    hear you, if you would.  Thank you.

11         MS. A████:  I would like to tell the Court how this

12    has affected my son and our family.  J██████ was a fun-loving

13    child until this happened, and then in the last year of his

14    life, he has been through more than any 10- or 11-year-old child

15    should.

16         He's missed school due to trauma.  Certain activities

17    cause him to melt down.  He can't participate in activities at

18    school because it brings back memories.

19         He has a hard time forming new relationships with

20    adults, especially males.  It's taken us a year to finally get

21    him to the point where he will talk to his therapist, who's

22    male, and it's only comfortable because I'm there with him, and

23    then I also -- like we can see into the therapist's room.

24         He was hospitalized at the end of September and the

25    beginning of October.  He wanted to kill himself.  He had a plan

1 on how to do it, which alarmed his therapist and us.  We took

2 him to the hospital, where he was admitted to the Lutheran

3 children's psych ward.  And he made a lot of progress, but while

4 admitted, we learned he needed to be treated for PTSD.

5        He's affected our financial aspects of our life.  I

6 have missed a fair amount of work due to appointments,

7 hospitalization, and daily needs of J██████.  I've had to step

8 down as manager and take a pay cut in the process because my

9 ability to be at work as been affected.

10        There's days where J██████ needed more care than was

11 able to be provided by one parent, days where he was suicidal

12 and when he would have flashbacks to the offense that happened

13 to him.

14        We have also since learned that Andrew took pictures of

15 our daughter, E██████████.  She was only 3 when these pictures

16 were taken.  While I do not know the extent of what happened

17 during that time he took pictures, I do have a mother's fear of

18 what could have happened.

19        My son will never be the same.  He has suffered at the

20 hands of Andrew in a way that no child should ever suffer.  I do

21 not believe that -- I do believe that Andrew will continue to be

22 a threat to children.  He has a history of sexual abuse to both

23 boys and girls.  We feel that he is -- it is not safe to have

24 Andrew free where he can inflict crimes on other children.

25        We thought we had our family protected by not allowing

1  Andrew to live in our home but in our garage, but we were

2  mistaken.  I will always regret allowing him near my children.

3          THE COURT:  Thank you, ma'am.

4          MS. A▓▓▓▓:  And then J▓▓▓▓, he's not here today

5  because he thinks that he's safest aways from child abuse.  And

6  when we found out about his sister, we decided to keep that from

7  him because he feels that at least he was the only one to

8  suffer.

9          But he would like to tell Andy, "Fuck you," for what he

10  did to him.  And I know that's bad language, but that's what he

11  wanted said.

12          And he -- he struggles.  He's got a lot of anger, and

13  he has a lot of questions as to why, and I can't answer those

14  for him.

15          THE COURT:  Thank you, ma'am.

16          Anything else in that regard, Mr. Kerndt?

17          MR. KERNDT:  No other victim impact statements, Your

18  Honor.

19          THE COURT:  All right.  The Court has received the

20  claim from the Jenny series and the Violet series.  Is there a

21  claim from the family involved in this case?

22          MR. KERNDT:  There is no restitution request from the

23  family, Your Honor.

24          THE COURT:  All right.  Is there any dispute between

25  the parties with regard to the appropriate amount of restitution

1   to the Jenny and Violet series?

2           MR. KERNDT:  No, Your Honor.  The parties agree that

3   $3,000 to each of the victims in those series --

4           THE COURT:  I didn't hear you.

5           MR. KERNDT:  $3,000 with respect --

6           THE COURT:  The statutory minimum?

7           MR. KERNDT:  -- with respect to each of the victims in

8   the At School series and the Jenny series.

9           THE COURT:  All right.  Please proceed.

10          MR. KERNDT:  The defendant abused ████████████

11   ██████.  He did it over and over and over again over the course

12   of many months.  He recorded that graphic abuse.  He forced a

13   10-year-old child to perform oral sex on him.  He exploited ███

14   ██████████████.  And he not only exploited these defenseless

15   children, he exploited his entire family.  They trusted him, and

16   he repaid that trust by devastating the things most important to

17   them.

18          The impact on the 10-year-old is truly devastating, and

19   I can't begin to put into words what the impact is.  His mother

20   did it quite eloquently.  But what we know for certain is the

21   psychological impact on that child is permanent.  It's had

22   already devastating consequences, and it will be forever

23   life-altering.

24          This was a 10-year-old child, a fourth-grader.  The

25   damage is real, and it's terrifying; suicide, self-harm, and

1   long-term consequences that are never going to go away.

2          But the harm to this child and this family and the need

3   to reflect the seriousness of the offense are only part of what

4   the Court needs to consider today.  The need to deter others is

5   part of what the Court must consider.  But the need to protect

6   the community is at the forefront; the need to protect the

7   community from the defendant, who has shown through his conduct

8   that he's dangerous, that he's a sexual predator.

9          Fifteen years ago, he sexually abused a 6-year-old

10  child in a significant way, as outlined in the presentence

11  report, and he has a history of sex offender registration

12  violations.  And then he chose to repeatedly reoffend over the

13  course of several months in the fall of 2020 into 2021, and this

14  time with even more devastating consequences.

15         The danger is real.  The defendant's conduct and

16  history indicate that the Court needs to protect the community,

17  and we have asked that the defendant be sentenced to a guideline

18  term of imprisonment that is 70 years, followed by a significant

19  term of supervised release should he ever get out of prison.

20         Thank you, Your Honor.

21         THE COURT:  Counsel, let me ask you a technical

22  question.  The statutory maximum on each of Counts 2 and 3 is 30

23  years.  If the Court were to sentence pursuant to what you're

24  suggesting, would it necessarily need to sentence with 2 and 3

25  consecutive?

1          MR. KERNDT:  It would, Your Honor.

2          THE COURT:  All right.  Thank you.

3          Pursuant to the provisions of Title 18, United States

4   Code, Section 3553, in determining the sentence that is

5   appropriate, the Court needs to consider the nature and

6   circumstances of the offense and the history and characteristics

7   of the defendant.  I have considered all of the factors under

8   Section 3553(a), although it will not be necessary to address

9   all of them in the process of explaining the sentence here

10  today.

11         Mr. Scanlan, I understand you've got a rough

12  background, and I understand you've been through a lot yourself,

13  but you are a sexual predator.  You're a dangerous guy, and

14  you're a dangerous guy to vulnerable people.

15         The Court begins and almost ends with the seriousness

16  of the offense.  The offense involving the children that came

17  from online sources is serious enough because it continues to do

18  damage to those children, but what you did under the

19  circumstances of this case so fundamentally violated the trust

20  of these good people and this child, these children, that the

21  seriousness of the offense is overwhelming.

22         Anything I do today is going to apply to the deterrence

23  of criminal conduct by others.  I need to be concerned about

24  protecting the public from further crimes that you might commit,

25  and it's obvious in this record that there is a huge danger that

1   you will commit further crimes, very serious crimes.

2           Accordingly, based upon the Court's review of the

3   criteria set forth in Title 18, United States Code, Section

4   3553, and the unique circumstances of this case, it is the

5   judgment of the Court that the defendant, Andrew Scott Scanlan,

6   is hereby sentenced to the custody of the Bureau of Prisons for

7   a term of 840 months, consisting of 360 months on each of Counts

8   2 and 3 consecutive and 120 months consecutive on Count 6.

9           The judgment will include the forfeiture of the

10  telephone and the micro card that were subject to the

11  Preliminary Order of Forfeiture entered in February.

12          Upon release from imprisonment, you'll be placed on

13  supervised release for a period of ten years as to Counts 2, 3,

14  and 6, to be served concurrently.

15          Within 72 hours of release from the custody of the

16  Bureau of Prisons, you are to report in person to the probation

17  office in the district to which you've been released.

18          While you're on supervised release, you're not to

19  commit another federal, state, or local crime.  You'll be

20  prohibited from possessing a firearm or other destructive

21  device, and you shall not possess any illegal controlled

22  substances.

23          You'll have to abide by the standard conditions of

24  supervised release, plus the following special conditions:

25          You must participate and follow the rules of a sex

1  offender-specific treatment program as directed by the probation

2  officer.

3       You must submit to periodic polygraph testing as

4  directed by the U.S. Probation Office to ensure that you are in

5  compliance with the requirements of your supervision or

6  treatment program.

7       You must refrain from associating with anyone engaged

8  in the exploitation of minors, whether known or unknown to

9  local, state, or federal law enforcement.

10      You must not go to or remain at anyplace for the

11 primary purpose of observing children under the age of 18 or

12 anyplace where you know children under the age of 18 are likely

13 to be.

14      You must not have any direct contact -- personal,

15 electronic, mail, or otherwise -- with any child you know or

16 reasonably should know to be under the age of 18, including in

17 employment, without the prior approval of the U.S. Probation

18 Officer.

19      You must not contact the victims, nor the victims'

20 family, without prior permission from the U.S. Probation

21 Officer.

22      You must not view or possess any visual depiction,

23 including any photograph, artwork, or otherwise, that contains

24 sexually explicit conduct.

25      You must not access the Internet or possess or use

1  computers or Internet-capable devices without the prior approval

2  of the U.S. Probation Officer; and if you are given approval to

3  use those materials, you must submit your devices to unannounced

4  examination and searches and possible removal for more thorough

5  inspection.

6          You must comply with all sex offender laws for the

7  state in which you reside and must register with the local

8  sheriff's office within the applicable time frame.

9          You must not apply for, solicit, or incur any further

10  debt, including, but not limited to, loans, lines of credit, or

11  credit card charges, without the prior permission of the U.S.

12  Probation Officer.

13          You must provide complete access to financial

14  information, including disclosure of all business and personal

15  finances, to the probation officer.

16          You must pay restitution in the amount of $3,000 each

17  to the Jenny series and the Violet series, and you will

18  cooperate with the U.S. Probation Officer in developing a

19  monthly payment plan consistent with the schedule of allowable

20  expenses provided by the U.S. Probation Office.

21          You must participate in a program of testing and/or

22  treatment for substance abuse as directed by the probation

23  officer.

24          You must submit to a mental health evaluation and, if

25  treatment is recommended, participate in an approved treatment

1   program.

2          And you will submit to a search of your person,

3   property, residence, adjacent structures, office, vehicle,

4   papers, computers, and other electronic communications or data

5   storage devices or media conducted by a U.S. Probation Officer

6   with or without the support of law enforcement, including the

7   United States Marshals Service.

8          The Court finds you're unable to pay a fine.  You are

9   ordered to pay a $100 special assessment to the victims

10  assistance fund on each count for a total of $300, which will be

11  due immediately and payable without interest to the U.S. Clerk

12  of Court for the Southern District of Iowa.

13         We have Counts 1, 4, and 5 to dismiss, Mr. Kerndt?

14         MR. KERNDT:  Yes, Your Honor.  We so move.

15         THE COURT:  Counts 1, 4, and 5 are dismissed.

16         Mr. Scanlan, you have retained the right to appeal from

17  the sentence that's being imposed today.  You would need to do

18  so within 14 days of the entry of judgment, and I anticipate the

19  judgment will be entered yet today.

20         Anything further to come before the Court regarding

21  Mr. Scanlan today?

22         MR. KERNDT:  Just one minor clarification.  With

23  respect to restitution, the $3,000 is to the child known as

24  Violet, which is part of the At School series, correct?

25         THE COURT:  That's my understanding, yes.

1          MR. KERNDT:  Thank you, Your Honor.

2          THE COURT:  Okay.  Anything further, Mr. Graeve?

3          MR. GRAEVE:  Nothing further, Your Honor.

4          THE COURT:  All right.  Thank you.

5          Court is in recess.

6          (Proceedings concluded at 10:25 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T E

2          I, Kelli M. Mulcahy, a Certified Shorthand Reporter of

3    the State of Iowa and Federal Official Realtime Court Reporter

4    in and for the United States District Court for the Southern

5    District of Iowa, do hereby certify that the foregoing is a true

6    and correct copy of the transcript originally filed with the

7    clerk of court on March 23, 2022, and incorporating the

8    redactions of personal identifiers in accordance with Judicial

9    Conference policy as requested by attorney of record Andrew J.

10   Graeve.  Redacted characters appear as a black box in the

11   transcript.

12          Dated at Des Moines, Iowa, this 29th day of March,

13   2021.

14

15

16                          /s/ Kelli M. Mulcahy
                            Kelli M. Mulcahy, CSR, RDR, CRR
17                          Federal Official Court Reporter

18

19

20

21

22

23

24

25